**Dotson v. Norman, et al.**

**Mounts v. Norman, et al.**

**Beasley v. Norman, et al.**

**Norman v. Norman.**

(Decided September 29, 1914.)

Consolidated Appeals from Pike Circuit Court.

Deeds—Validity—Fraud and Misrepresentation—Pleading and Evidence—Weight and Sufficiency of Evidence.—The proof offered in support of a charge of fraud must be clear and convincing and

such as to overcome the legal presumption of innocence and beget in the mind a belief in the truth of the charge of unfair dealing. And, inadequacy of consideration, when asserted as ground for the cancellation of a conveyance, must be such as will shock the conscience and constitute of itself convincing proof of fraud and undue influence inducing the execution thereof. In estimating the probative force of testimony in support of an attempt to obtain the cancellation of a conveyance for inadequacy of consideration, the chancellor may give some weight to the fact that witnesses testifying concerning the values of land, as of a date prior to the development of coal operations thereof, when such witnesses are testifying after such development has demonstrated an increased value of such lands, is apt to be more or less influenced by the fact of such subsequent increase in value and the present condition in that respect. The controlling fact is the value of the property conveyed at the time of the conveyance; if the price paid was then a fair price it matters not how many times the property has increased in value since the conveyance as the result of the discovery of resources then unknown or as the result of the development of resources then unknown, but the value of which was not then realized and appreciated.

J. S. CLINE for appellant.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On December 4, 1897, Richard Daniels, alias Mounts, being the owner of a certain tract of land in Pike County, executed together with his wife, Margaret, and delivered to J. K. Anderson and J. G. Lundy a lease whereby was granted to the lessees the exclusive right to mine and ship coal therefrom, it being provided that until operations were commenced, a rental of fifty dollars per annum should be paid to the lessors by the lessees, and thereafter a royalty of seven cents per ton on all coal mined and shipped therefrom.

This lease, on February 4, 1902, was assigned and transferred by Anderson and Lundy to one Cliness; and on October 29, 1906, Cliness, with Anderson and Lundy joining, assigned and transferred it to the Thacker Coal Mining Company. That company commenced operations on the land in December, 1909, and has mined and shipped coal therefrom ever since.

On December 4, 1901, Richard Daniels, alias Mounts, conveyed to his wife, Margaret, with remainder to her children, a life estate in the surface of the tract of land, the coal of which had been leased as above mentioned.

Soon thereafter Daniels died intestate, leaving eight children, five of whom are still infants. In 1908, his widow married one David Dotson.

On January 9, 1909, Margaret Dotson (formerly Daniels, alias Mounts) and her husband, David Dotson, conveyed to F. M. Norman all the right, title and interest possessed by them in the coal under the lands above mentioned, for a consideration of two hundred dollars.

On May 9, 1911, she instituted an action in the Pike Circuit Court seeking a cancellation of that deed upon the ground of duress practiced by her husband and of fraud practiced by the grantee, Norman, in procuring the execution thereof.

On January 4, 1909, Roxie Beasley, a daughter of Richard Daniels, alias Mounts, and of Margaret Dotson, together with her husband, conveyed to F. M. Norman all her undivided interest in and to the coal in and under the lands mentioned, as heir-at-law of said Richard Daniels, the consideration paid being two hundred dollars; and which deed by an action instituted by her in the Pike Circuit Court on May 9, 1911, she sought to have canceled upon the ground of fraud and misrepresentation practiced by the grantee, Norman, in obtaining the execution thereof.

On April 20, 1909, Mary Norman, another daughter of Richard Daniels, alias Mounts, deceased, together with her husband, sold and conveyed to F. M. Norman all her undivided interest in the coal under the lands mentioned, as heirs-at-law of said Richard Daniels, for a consideration of two hundred dollars, which deed by an action instituted by her in the Pike Circuit Court on July 24, 1911, she sought to have canceled upon the ground of fraud and misrepresentation practiced by the grantee, Norman, in obtaining the execution thereof.

On December 2, 1908, before conveying her interest in the coal under the tract mentioned to Norman, Margaret Dotson and her husband, David Dotson, had sold and conveyed to Florence B. Mounts for a consideration of twenty-five dollars, twenty-five acres by metes and bounds of the farm in which Margaret Dotson owned a life estate in the surface by conveyance from her former husband as above mentioned. On December 29, 1909, Florence B. Mounts, by an action instituted in the Pike Circuit Court against F. M. Norman, sought to quiet her title to the twenty-five acres which she had pur-

chased from Margaret Dotson, and to have canceled the deed executed by Margaret Dotson and her husband to Norman, conveying to him their interest in the coal under the lands mentioned, in so far as such deed purported to constitute a cloud upon her title to the twenty-five acres by her purchased from Margaret Dotson.

In all these actions, the Thacker Coal Mining Company was made a party defendant, and it was prayed that that company be restrained from paying over to defendant, Norman, royalties on the coal being mined and shipped from the lands in controversy pending an adjudication of the rights of the respective parties.

The four actions were consolidated and tried together in the circuit court by a special judge agreed upon by the parties, and all four petitions were dismissed. All four plaintiffs appeal. The causes have been consolidated in this court, and will be disposed of in a single opinion.

1. We will first take up the cases of Roxie Beasley v. Norman and of Mary Norman v. Norman, in which the respective plaintiffs sought cancellation of their deeds to Norman upon the ground of fraud inducing the execution thereof.

In substance, it was alleged in the petitions that neither the plaintiffs nor their husbands could read or write, and that all were ignorant and unlearned and without business experience; that defendant, Norman, was a well-educated, shrewd business man; that he represented falsely and fraudulently to them that there was no coal in and under the land; that their interests were not worth to exceed two hundred dollars, and that their mother, Margaret Dotson, would hold or be entitled to all the coal under the land; that Norman further represented to them that their father, Richard Daniels, at his death owed a large sum of money to various parties, and that many years' taxes were a lien against the land; and it was alleged that yielding to these false representations the plaintiffs executed the conveyances sought to be canceled. It was further alleged that the price received by them was inadequate; that the shares so sold by them were each worth three thousand dollars at the time of the sale thereof. These charges were denied by the defendant, and the proof is conflicting. The proof offered in support of any charge of fraud must be clear and convincing and such as to overcome the legal pre-

sumption of innocence and beget in the mind a belief in the truth of the charge of unfair dealing. Giving due weight to the finding of the chancellor upon this issue, we can not say that it is not right.

Upon the issue of inadequacy of consideration, it was shown that these conveyances were made before any coal-mining operations had commenced on the land; it was shown that the actual coal-bearing area of the tract is much less than its surface area, the surface area about two hundred and fifty acres and the coal-bearing area being about thirty-five acres, there being about fourteen acres in the vein now being operated, and probably twenty-one acres in another vein, the exact extent and value of which, however, is still a matter of uncertainty. It was shown that a sister of these plaintiffs sold her undivided interest in the coal under this land for one hundred and twenty-five dollars to an attorney in Pikeville, who resold it to Norman for two hundred dollars; and this attorney testified that at the time he bought that interest, Mary Norman offered him her interest for one hundred and fifty dollars.

The rule as to inadequacy of consideration is stated in Bevins v. Lowe, 159 Ky., 439: "When asserted as a. ground for the cancellation of a conveyance, inadequacy of consideration must be such as will shock the conscience and constitute of itself convincing and undeniable proof of fraud or undue influence. Story on Equity Juris., Sec. 264; Pomeroy on Equity Juris., Sec. 927; 6 Cyc., 286."

Viewing the testimony in the light of this rule, it can not be said that the consideration was so inadequate as to authorize a cancellation of the deeds sought to be avoided.

In conformity to the rule that the finding of the chancellor will not be disturbed unless palpably against the weight of the evidence, the judgments in these two cases will remain as rendered. Affirmed.

2. As to the action instituted by Margaret Dotson against Norman seeking the cancellation of her deed conveying to him her interest in the coal of the tract of land mentioned, it was alleged in the petition that she was fifty-four years of age at the time of her marriage with David Dotson, who was then twenty or twenty-one; that he was a man of desperate character, accustomed to the carrying and use of deadly weapons, and that since

the execution of the deed in question he was convicted of wilful murder and given a life sentence in the penitentiary; it was charged that the plaintiff was uneducated, unlearned, unable to read or write, and without any business experience; that defendant, Norman, prevailed with plaintiff's husband to coerce her to execute a conveyance of her interest in the coal mentioned; that her husband threatened to kill her if she did not sign the deed. It was further alleged that defendant, Norman, represented to her that her interest was worth but little, and that her former husband owed quite a sum of money as well as taxes on the land, and that it would be sold to pay those obligations and she would have nothing left; and plaintiff says that intimidated by her husband and relying on the false representations made by Norman, she executed the conveyance sought to be canceled.

But her own testimony does not bear out the charges of her petition. It was not shown that defendant, Norman, was in any manner connected or acquainted with any threats made to plaintiff by her husband; in fact, her own testimony does not show duress clearly. And she admits that Norman made no representation to her in regard to her former husband owing large debts as well as taxes at the time of his death. She does claim that Mrs. Norman told her there were two years' taxes unpaid thereon, which statement plaintiff admits was true. Plaintiff also testified that Mrs. Norman told her that she owned only one-third of an heir's share in the land. This Mrs. Norman denies. It was shown in proof that Margaret Dotson went from her home four or five miles to the home of defendant Norman, and not finding him there, she waited a couple of days for him to come home, as she wanted to sell him her interest in the coal under the lands mentioned; that finally Mrs. Norman bought plaintiff's interest, without waiting for Mr. Norman to return home. The conveyance was made, Margaret Dotson received the money, used a part of it herself and took the remainder home, where her husband took possession of it. On the whole, the charge of fraud inducing the execution is not borne out by the proof.

But, it is insisted that the consideration received by Margaret Dotson for her interest was so inadequate as to justify cancellation of the conveyance. But in this contention we can not agree. At the time she sold her

interest, the extent and value of the coal deposits under that tract of land was not definitely known. And while the property was under lease, there was no certainty as to when operations would commence under the lease; nor was there any certainty as to the rapidity with which the operations would be conducted after they were started; and finally, there was no certainty as to how long Margaret Dotson would continue to live.

In respect of the charge of inadequacy of consideration when relied upon as ground for the cancellation of a conveyance, the evidence upon this issue is to be weighed by the chancellor and its probative force estimated and determined in much the same manner as evidence is weighed by a jury. The chancellor may, as a jury may, call to his aid in a matter of common knowledge his general experience as a man of affairs, and he may rationally accord to the testimony of a witness upon the subject of value a force proportionate to the freedom of the witness from any motive to misrepresent which might be considered as controlling. And he may give some weight to the fact that the opinion of witnesses testifying concerning values of land, as of a date prior to the development of coal operations thereon, when such witness is testifying after such development has demonstrated an increased value of such lands, is apt to be more or less influenced by the fact of such subsequent increase in value and present conditions. The controlling fact is the value of the property conveyed at the time of the conveyance; if the price paid was at the time under the circumstances a fair price, then it matters not how many times the property has increased in value since the conveyance as the result of the discovery of resources then unknown, or as the result of the development of resources then known but whose value was not then realized and appreciated.

The judgment in this case is also affirmed.

3. As to the action instituted by Florence B. Mounts, it appears therefrom that she claims an interest in the coal under the twenty-five acres conveyed to her by Margaret Dotson.

The deed by which Margaret Dotson and her husband David conveyed to Florence B. Mounts, purports to convey a designated twenty-five acre tract describing the same by metes and bounds. No reference is made to the coal thereunder, and as at the time of that

conveyance, Margaret Dotson held under a deed conveying to her only a life estate in the surface, and there had been no determination as to the extent of her interest in the coal, we conclude that the deed did not pass to Florence B. Mounts any interest in the coal under the land mentioned. In the deed, reference is made to the conveyance by which she was granted a life estate in the surface of the farm by her former husband, and no reference is made to any claim of dower in the coal. It is evident, therefore, that the deed in question conveyed to Florence B. Mounts an estate during the life of Margaret Dotson, in the surface of the twenty-five acres conveyed.

The judgment dismissing her petition is also affirmed.