## United Talking Machine Company v. Metcalfe.

(Decided February 20, 1917.)

Appeal from Muhlenberg Circuit Court.

1.  Appeal and Error—Law of the Case.—The law as determined upon the first appeal of a case is the law of the case in all subsequent trials, provided the facts are substantially the same as shown upon the first trial.

2.  Contracts—Avoidance—Misrepresentation and Fraud.—One sui juris who signs a contract between himself and another sustaining no confidential relations toward him is bound by the terms of the contract which he signs, unless his signature is procured by misrepresentation and fraud on the part of the one with whom he contracts. But, in order to establish such misrepresentation or fraud, the one guilty of it must say or do something to prevent the other from discovering the misrepresentation or fraud by the use of ordinary diligence; the fact that the contract was not read by the one who signed it is not alone sufficient to relieve him of liability if he could read and the guilty party did nothing to prevent its being read or falsely read it to him.

3.  Contracts—Knowledge of Contents—Diligence.—It is the duty of one who signs a contract to exercise ordinary diligence to discover

its contents, and if he signs it without exercising such diligence he will be bound by its terms and will not be heard to say that he trusted entirely to the honesty and integrity of the other party thereto.

C. A. DENNY for appellant.

WALKER WILKINS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee (defendant) was a dry goods merchant at Central City, Kentucky, and on the 23d day of January, 1913, he executed the writing sued on, which, among other things, is an order to appellant (plaintiff) for thirteen symphony, hornless talking machines, together with records, needles and other attachments necessary for their use. One of the machines was to be sent immediately by express from the Chicago office of the plaintiff, which was done, and the other twelve were to be shipped by freight from Bridgeport, Connecticut, the place of manufacture, for all of which the defendant agreed to pay a total sum of $281.96. In due time the remaining twelve machines arrived at Central City and were delivered to the defendant's store, but he declined to accept them and shipped them to plaintiff at Chicago, Illinois. Plaintiff refused to accept them, and after fruitless efforts to collect or settle the account in some way it filed this suit in the Muhlenberg Circuit Court.

Defendant's answer is a denial and a plea of fraud in procuring the contract. A trial resulted in a verdict and judgment in favor of defendant, from which an appeal was prosecuted to this court and the judgment was reversed on April 23, 1915, in the case of United Talking Machine Co. v. Metcalfe, 164 Ky. 258. Upon a return of the case a second trial was held, resulting in another verdict for the defendant, and to reverse the judgment rendered therein the transcript has been filed in this court by plaintiff accompanied with its motion for an appeal.

The facts are fully set forth in the first opinion, and we will make no reference to them except in so far as is necessary to explain this opinion. The evidence upon the two trials was identical, except on the last one the defendant again testified before the jury. The circumstances under which he signed the contract, and which he claims constituted the fraud upon which he relies, as

testified to by him on the first trial, are set out in the former opinion rendered in this case, from which we quote:

"Q. When you signed this paper purporting to be a contract, what were you doing? A. About that time three or four customers came in and Mr. Gentry called me back and says: 'Here is one other little thing I want you to sign just to show that you are our representative.' Did you know at that time that you were ordering thirteen sets of records and machines? A. I didn't read it. Q. Why didn't you read it? A. I thought I was doing business with business people; I thought Mr. Gentry was an honest man. Q. What were you doing? A. I was busy, customers coming in. Q. How long had he been there then? A. About two hours. Q. How long after you signed this paper until he left? A. Just a few minutes. Q. Were you still busy when he left. A. Yes, sir. Q. Had you seen the paper before you signed it? A. No, sir. Q. When you signed this did you sign it over carbon? A. Not that I know of. Q. Did he leave a carbon copy of this paper with you? A. No, sir."

At the last trial, upon this same point, he said: "Q. What was it he (plaintiff's agent) said this paper was? A. He said that paper showed I was their local representative in this section. . . . . Q. Well, you signed this paper? A. I signed the paper all right. Q. Did he read this paper to you? A. No. Q. How came you to sign that paper? A. I thought Mr. Gentry was an honest man, and relied upon what Mr. Gentry said that paper contained. Q. If you had known at the time that it did not contain what he said it did, would you have signed it? A. I would not. . . . . Q. Why did you sign that paper? A. Well, I thought I was doing business with an honest man, and relied upon what Mr. Gentry said that paper contained, the reason I signed it. . . . . By the court: You may ask him that, why he didn't read it before he signed it? A. Well, I was busy and thought I was doing business with an honest man and I relied upon what Mr. Gentry said it contained."

The evidence upon both trials showed that plaintiff's agent and the defendant were talking over and discussing the proposition for at least two hours before the paper in question was signed, and that the agent remained at the store at least thirty minutes after it was signed, during which time selections of some of the rec-

ords desired were being made. It is also claimed by the agent that he furnished to the defendant a carbon copy of the contract. This, however, is denied by the latter. In the former opinion the rule governing the rights of the parties under circumstances such as we have here is stated to be:

"It is a rule in this State that a party who can read and has an opportunity to read the contract he signs must stand by the words of his contract, unless he is misled as to the nature of the writing which he signs, or his signature is obtained by fraud."

The cases of Western Mfg. Co. v. Cotton & Long, 126 Ky. 749; Blake v. Black Bear Coal Co., 145 Ky. 788; Case Mill Mfg. Co. v. Vickers, 147 Ky. 396; J. I. Case Threshing Machine Co. v. Mattingly, 142 Ky. 583, and the Chicago Building & Mfg. Co. v. Beaven, 149 Ky. 267, are referred to and the court continues:

"To sustain the charge that the party's signature was obtained by misrepresentation it must appear that the misrepresentation was material; that it was relied upon by the person whose action was intended to be influenced, and that it was made with knowledge of its falsity."

In determining that the evidence upon the first trial failed to show such misrepresentation or fraud as would relieve the defendant from liability, it is said:

"The contract did provide that defendant was to be the local agent. Nowhere does defendant say that he failed to read the contract because of the alleged statement of the agent. Nowhere does he say that he relied upon any representation of the agent as to the effect of the contract.

"His sole excuse is that he thought he was doing business with business people and that the agent was an honest man. In failing to show that he relied upon the alleged misrepresentation of the agent and was thereby prevented from reading the contract before he signed it, he did not sustain the defense that his signature to the contract was obtained by fraud."

We are unable to detect any substantial difference between the testimony given by defendant upon this point on the first trial, and that given by him on the last trial. It is true that in his testimony on the last trial he gave as one of the reasons why he signed the contract without reading it: "I *relied* upon what Mr. Gentry said

it contained," but this is substantially what he said upon the first trial, when he gave as an excuse for not reading the contract the answer: "I thought I was doing business with business people; I thought Mr. Gentry was an honest man." This is tantamount to saying that inasmuch as he confided in the honesty of Gentry he thereby *relied* upon what he said. The use of the word *rely* does not make the fact of reliance any stronger if the circumstances show that reliance on what may have been said or done existed as a matter of fact, and that such reliance existed, according to defendant's testimony upon the first trial, there can be no doubt.

Nothing more is shown upon the last trial than was shown upon the first trial as a legal excuse for defendant's failure to read the writing which he signed. It would seem, then, that the well recognized rule of practice prevailing in this court to the effect that the opinion upon the first appeal becomes the law of the case under substantially the same facts, should be applied here. It will be noticed that the alleged misrepresentation by plaintiff's agent which defendant claims constitutes the fraud is: "He (the agent) said that paper showed I was their local representative in this section," and, relying upon the agent as being an honest man, defendant believed that statement and signed the writing. As a matter of fact the statement by the agent was literally the truth, and was so found by this court upon the former appeal when it said in its opinion: "The contract did provide that the defendant was to be the local agent." It is not shown anywhere that plaintiff's agent stated that the question of agency was the *only* thing contained in the writing, nor does it anywhere appear from defendant's testimony that such agent made any false statements or any misrepresentations as to what the writing did or did not contain. He did not represent that any particular stipulation was in the contract when it was not, nor did he state that any particular stipulation was not in the contract when in truth it was. But if he had falsely made these statements, or either of them, the defendant as he was then situated could have, by the use of ordinary diligence, detected the fraud, it would have been his duty to do so. The only statement the agent made as a foundation for the alleged fraud is that the writing showed that defendant was plaintiff's agent, and this, as we have seen, was literally the truth.

Aside from the rule by which we are to be governed by the former opinion, it might be well enough to say that one *sui juris* and in possession of his faculties, contracting at arm's length, and who is able to read and write, is not permitted by the law to rely exclusively upon the statements of the other contracting party as to the contents of a writing which the former signs. There must be something said or done by the party charged with the fraud which would be reasonably calculated to disarm or deceive one of ordinary prudence and to prevent him from using such diligence as an ordinarily prudent man would use in the execution of a contract under the same or similar circumstances. When, therefore, the law speaks of *misrepresentations* by the party charged with the fraud, it means that the representations must have been not only untrue, but also made under such circumstances as would be reasonably calculated to deceive one while exercising ordinary care for his own protection. It was so held by this court in the case of J. I. Case Threshing Machine Co. v. Mattingly, *supra*, the facts of which are very similar to those we have here, and this court, in upholding the rule, quoted with approval from Upton v. Tribilcock, 91 U. S. 45, as follows:

"It will not do for a man to enter into a contract and when called upon to respond to its obligations to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

But in the opinion, the court, recognizing the qualifications of the rule that if the one who signed the paper did so under circumstances which deceived him, and by which he was defrauded, said: "A different rule prevails where the party is misled as to the nature of the writing, *and is not himself negligent.*"

The same rule as to the diligence which one signing a contract must exercise has been followed by this court without exception, as will appear from the cases, *supra*, and also Huber Mfg. Co. v. Piersall, 150 Ky. 307. This court said nothing in the former opinion in this case modifying in the least the rule which we have just considered, nor is there any intimation to that effect therein.

What it said was directed toward showing that the testimony of defendant which was then being discussed did not entitle him to rely upon the defense he presented. It was merely stated that none of the facts enumerated were shown on the first trial, without saying that if they had appeared in the case they would have been sufficient to sustain the defense. This is the only extent to which it went, and it cannot be claimed that the court intended to relieve the defendant from the operation of the rule requiring him to exercise reasonable care and diligence for his own protection at the time he signed the writing sued on. The inevitable conclusion, then, is that defendant failed by his testimony to manifest such fraud or misrepresentation on the part of plaintiff's agent as under the rule, *supra,* will relieve him of liability.

It therefore results that plaintiff's motion for a directed verdict in its favor should have been sustained. Wherefore, plaintiff's motion for an appeal is sustained, the appeal granted and the judgment reversed with directions to proceed in accordance with this opinion.