## Jones et ux. v. Brammer.

(Decided May 24, 1929.)

650

WOODS, STEWART & SMOOT for appellants.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an action for the rescission of a contract for the exchange of lands. Appellant, Ava Jones, who was the plaintiff below, owned a house and three lots in a suburb of Ashland, Ky., and the defendant, Brammer, owned a farm of 92½ acres of land in Lawrence county, Ohio.

The parties entered into negotiations for the exchange of their properties, which culminated in a written contract. They valued the Ashland property, owned by Jones, at $4,500 and the Ohio land, owned by Brammer, at $6,000. There was a mortgage for $3,000 on the Ashland property to a building association, which left Jones an equity of $1,500. J. T. Colegrove held a mortgage on the Ohio land for $2,000 leaving Brammer an equity of $4,000. On March 16, 1926, the parties signed the following contract:

"This contract for the exchange of property, entered into this 16th day of March, A. D. 1926, at Ironton, Ohio, by and between J. M. Brammer, of Ironton, Ohio, and Ava Jones, of Ashland, Kentucky, witnesseth:

"J. M. Brammer exchanges a farm of ninety-two and one-half acres on Pine creek, Lawrence county, Ohio, on which is a mortgage of two thousand dollars ($2,000.00), and on which said Ava Jones agrees to give J. M. Brammer a second mortgage for two thousand five hundred dollars ($2,500.-

00) until such time as J. M. Brammer can get a loan on said farm for said Ava Jones, from the Joint-Stock Land Bank, which J. M. Brammer agrees to do as soon as practicable at his own expense, and when said loan is acquired then said Ava Jones agrees to give J. M. Brammer a second mortgage for the balance of four thousand and five hundred dollars ($4,500.00) not secured from the Land Bank; said remainder being payable at the rate of three hundred dollars ($300.00) per year, with six per cent. int. payable annually.

"Said Ava Jones agrees to deed to J. M. Brammer a certain house and three lots in a subdivision of Ashland, Ky., known as Pollard, definite description of which will be contained in a warranty deed to be made to J. M. Brammer free from all incumbrance, except a mortgage of approximately three thousand dollars ($3,000.00) which J. M. Brammer agrees to assume. Said deeds to be exchanged on March 16, 1926."

On the same day that the contract was executed, Jones and wife conveyed the Ashland property to Brammer, and Brammer and wife conveyed the Ohio land to Jones. Jones never moved on the farm, and no loan was procured from the Jont-Stock Land Bank. Shortly after the conveyances were made, Jones executed a note to Brammer for $2,500, due one year after date, secured by a second mortgage on the farm, and Brammer assigned the note to the Ironton Mortgage Compnay. In December, 1926, Colegrove began to insist upon the payment of the $2,000 mortgage, and Jones refused to pay any interest on this mortgage, or any part of the principal, unless Brammer obtained a loan for him from the Joint-Stock Land Bank. Brammer agreed to make an application for the loan, if Jones would move upon the land and cultivate it, which was a necessary requirement before a loan would be granted. He also obtained the consent of Colegrove and the holder of the second mortgage to let the loans run for another year, if Jones would pay the interest, amounting to $270. Brammer agreed that in the meantime he would make application for a loan from the Joint-Stock Land Bank, if Jones would move upon the land. Jones declined to accept this offer, and Colegrove brought suit to foreclose his mortgage.

Jones and wife then instituted this suit in the Boyd circuit court in which they asked for a cancellation of the deed by which the house and three lots in Ashland were conveyed to Brammer. As grounds for the cancellation of the deed, it was alleged that it was procured by reason of the false and fraudulent statements of the defendant that he would obtain a loan from the Joint-Stock Land Bank for the plaintiff, and that such statements were known to the defendant to be false and fraudulent when he made them, and that they were made with intent to deceive the plaintiff, and to cause him to execute the deed, and that he relied upon such statements. Upon a submission of the case, the chancellor dismissed the petition, and plaintiffs have appealed.

Brammer testified that at the time the contract was executed he explained to Jones that, under the regulations governing the granting of loans by the Joint-Stock Land Bank, it would be necessary for Jones to move upon the land and cultivate it; that he informed Jones that he was not the agent of the bank, but merely filled out and forwarded to it applications for loans. He further testified that he was ready and willing to make an application for a loan for Jones at any time that the latter qualified himself for a loan. Jones denied that any such explanation was made to him before the contract was executed, and he is supported by the testimony of J. D. Haggard, who was a real estate agent representing Jones, and who was present on practically every occasion when the proposed exchange of properties was discussed by the parties. Brammer is supported to some extent by two or three witnesses, who heard Jones express an intention to move upon the land.

It is appellants' theory that appellee had no intention of obtaining a loan from the Joint-Stock Land Bank at the time that he represented he would do so, and that his failure to carry out his contract in this respect resulted in Jones being forced to sacrifice the land. The evidence does not support this theory. Had a loan of $2,500 been obtained, Jones would have been required to pay during the first year, under the contract, the sum of $595. Before a suit to foreclose the mortgage was instituted, Brammer agreed to have the loans extended for another year, if Jones would pay the interest, amounting to $270, and that he would obtain during the following year a loan from the Joint-Stock Land Bank, if Jones would move upon the land.

As argued by counsel for appellants, fraud may be predicated on the nonperformance of a promise in certain cases, where the promise is accompanied by a present intention not to perform it, and is made for the purpose of deceiving the promisee and inducing him to act, where otherwise he would not have done so. Under such circumstances the misrepresentation of one's intention amounts to the misstatement of an existing fact, of which the court will lay hold for the purpose of defeating the wrong that would otherwise be consummated thereby. To authorize the rescission of a contract on the ground of fraud, however, the fraud must be established by clear and convincing evidence. Wood's Guardian v. Inter-Southern Life Ins. Co., 224 Ky. 579, 6 S. W. (2d) 712; McAllister v. Lambrose, 221 Ky. 44, 297 S. W. 936; Lossie v. Central Trust Co., 219 Ky. 1, 292 S. W. 338; Larmon v. Miller, 195 Ky. 654, 243 S. W. 939; Cole v. Young, 167 Ky. 600, 181 S. W. 177. We are of opinion that appellants have failed to meet this requirement.

The proof tends to show that Jones was responsible for the failure to obtain the loan from the Joint-Stock Land Bank. He refused to move upon the farm, or to repair the buildings thereon, or get the property in shape for an appraisement. He leased part of it to a tenant, retaining the house and 60 acres of land, with the evident intention of moving upon the land himself; but later, without the knowledge of Brammer, he leased all of his farm, and rented another farm, and moved upon it. Under these circumstances, an application for a loan would have availed nothing. Plaintiff's own testimony tends to show that he expected to move upon the land and cultivate it, and a fair interpretation of the evidence leads to the conclusion that such was the understanding of the parties. Defendant's acts, up to the institution of this suit, evince an inclination on his part to assist plaintiff in every reasonable way, and to carry out any promise made by him, if the plaintiff would co-operate. To say that defendant falsely represented that he would obtain a loan from the Joint-Stock Land Bank, and that his intention at the time was not to perform the promise, would be merely a conjecture, not supported by the evidence.

The plaintiff having failed to establish the fraud alleged by him by clear and convincing evidence, the chancellor properly dismissed his petition. Wherefore the judgment is affirmed.