## Kentucky Road Oiling Company v. Sharp.

(Decided December 18, 1931.)

HUMPHREY, CRAWFORD & MIDDLETON, FIELD McLEOD and MARVIN H. TAYLOR for appellant.

WILEY MARSHALL and HARRY A. SCHOBERTH for appellee.

Opinion of the Court by Stanley, Commissioner—Reversing.

The appellee, Otis Sharp, recovered a judgment against the appellant, his employer, for $20,000 on account of severe burns suffered by an explosion or flare of flame on a road oiling machine. It consisted of a large tank containing road oil which was heated, in order to secure better penetration, by kerosene gas forced by compressed air from a small tank located on the chassis through pipes into several burners. There was a master valve on the main feed pipe which the plaintiff's evidence showed was leaking, and thereby permitted gas to be forced through prematurely onto or into hot burners while the plaintiff was filling the tank with air.

Several grounds are submitted for reversal of the judgment, but we deem it necessary to consider only one of them. Other questions are reserved.

The court is of the opinion that the verdict is flagrantly against the evidence respecting the acceptance by the appellee of the terms of the Workmen's Compensation Act (Ky. Stats, sec. 4880 et seq.).

The applicability of the Workmen's Compensation Act to the appellant's business or operations is certain, and there is no cavil about the regularity of its election to operate under it, or of its acceptance of its provisions. The issue was whether or not the appellee had accepted its provisions. It was submitted to the jury, along with the questions of negligence, by instructions, the form of which was satisfactory to both parties. The award of damages was conditioned upon the finding that the employee was not working under the Compensation Law. If the plaintiff had accepted the provisions of the law, and was at the time he sustained the injuries working thereunder, he had surrendered his right to maintain the common-law action for damages, and had agreed to resort to the substituted remedy. Section 4882, Statutes; Grannison's Admr. v. Bates & Rogers Construction Co., 187 Ky. 538, 219 S. W. 806; Taylor's Admr. v. Bates & Rogers construction Co., 196 Ky. 206, 244 S. W. 693.

A marshaling of the facts on this issue, we believe, will sustain our decision. The question of estoppel argued in briefs is not involved, for it was not pleaded. The defense on this point was merely an affirmative plea of an election to work under the terms of the Workmen's Compensation Act and that was traversed.

Under the pleadings, the burden was upon the defendant to prove that the plaintiff had elected to accept compensation for injuries in accordance with the Compensation Act, and thereby had no right to maintain the suit. So we note first the evidence introduced to sustain that burden.

Sharp had worked for the company in 1924 and in 1928. The term of his employment, during which he suffered the accident, began about the middle of May, 1929, and he had been engaged on this job about one month. Charles Bevins, foreman of the crew, testified that, a few days after Sharp went to work on this occasion, he had personally had him sign the register containing the printed form of acceptance outlined in the statute; that this book was carried about in his pocket to various points in the state where his duties required him to supervise different jobs of his company; that the particular register which Sharp had signed some 18 months before the trial had gotten lost or misplaced, and could not be produced.

An adjuster for the company's insurance carrier testified that he made an investigation of the accident when it was reported, and had suggested to appellee's doctor that, in order for Sharp to secure compensation, it would be necessary that he execute form No. 9, which was an agreement as to the payment, and that Dr. Blackburn promised that he would explain the purpose of the execution of that document to Sharp, and get him to sign it. Accordingly, the form was prepared and taken by Allen, an officer of the appellant company, to Sharp at his home and left with him that he might go over it with his doctor and execute and return it. Allen testified that Sharp thoroughly understood the matter, and that he had asked him how long it would be before he would get his check from the insurance company, as he needed the money. To relieve his financial situation, Allen gave him his personal check for $25.

This paper, form 9, was shortly returned, apparently signed by Sharp and witnessed by Dr. Blackburn. The agreement was for the payment of the full compensation allowance, and was subsequently approved by the Compensation Board. This form clearly showed that it related to the Workmen's Compensation Law, and was an agreement as to what should be paid under its provisions. It bears the name, as his signature, "Ottis Sharp."

Cook, the insurance adjuster, further testified that, between the time of his talk with Dr. Blackburn about the execution of the compensation agreement and its return, the doctor told him that Sharp had signed it. It should be said that evidence of this and the first conversation was admitted in contradiction of Dr. Blackburn, whose evidence will be presently noted. Again when he visited Sharp in September to make his final settlement, he, Cook, in the presence of Sharp, expressed to the doctor his thanks for having explained the matter and assisted him in having his payments started early.

The payments were at the rate of $15 a week, and had been made every two weeks. There were produced six receipts purporting to have been signed by Sharp, each of which clearly manifests a payment under the Compensation Act. Those payments had been made by drafts of the insurance company, with its name prominently displayed, and showed that they were for the account of the Kentucky Road Oiling Company by reason of the accident which Sharp had suffered. The drafts likewise contained on the back a receipt, and all of these purported to have been signed and indorsed by sharp.

Leslie Perkins, an officer of the appellant, testified that on two occasions Sharp called him on the phone and asked if his insurance check had come in, and in a day or two came to the office and got a draft, and that he signed Sharp's name to the receipt as his request.

Over against this evidence, Sharp denies that he ever at any time or place accepted the provisions of the Compensation Act or agreed to work under it, or had ever signed or authorized anybody else to sign the register or any other paper referring to the law; and further denied the receipt of any benefit under it. He says he did not know the company was working under that act, and never heard of it. But he admitted having received the aggregate of the drafts referred to, which was something less than $200. His explanation is that he "figured it was my regular salary coming on." But those sums paid by the drafts of the insurance company instead of the Kentucky Road Oiling Company by whom he was employed were one-half of what he had been receiving in wages, and he did not at any time make any inquiry or complaint as to the difference. He denied having executed form No. 9, the agreement as to the amount to be paid. He denied having signed or authorized the signing of any of the receipts and drafts, except two of each. One of those

bore his name as spelled ''Ottis,'' the same as that attached to form 9, and a comparison of those signatures makes it clear that, if he signed one, he signed the other. His name to some of the other receipts and drafts appears to have been signed by some other person for him, and witnessed by that person.

Without detailing the evidence of these witnesses and the circumstances, we think it is shown beyond reasonable doubt that all these papers were signed either by Sharp, personally, or by his authority, and that he received the sums therein referred to. He could not but have known their contents and realized what they were.

Sharp denies that when Allen came to see him he said anything about the Workmen's Compensation Law, and says that the check was for $30, whereas Allen states that he gave him his personal check for $25. He says that nobody ever claimed that he was being paid under the Workmen's Compensation Act.

Dr. Blackburn stated that his name on form 9 looked like his signature, but he had no recollection of ever having witnessed any paper for Sharp. Being pressed for a definite answer, the doctor would only say that ''it is all hooked together and that is the way I write''; and further: ''That don't look like my signature except that it is all written without taking the pencil up off the paper, but it don't look like my signature.'' He had previously stated that it did look like it. He would not say positively whether he did or did not sign his name to that paper. Concerning the related evidence of Cook, the doctor did recall his visits, and that he told him that he had Sharp insured; but he testified he had no conversation with him respecting compensation.

Weighing this evidence, it may be observed that it was much to the financial interest of the company to have had this employee, along with its others, to sign the register. This gives rise to a presumption which may be said to support the positive testimony of the foreman that Sharp did so. Yet, through negligence or carelessness, the foreman may not have had Sharp sign the paper. Memory of such transactions is often fickle and unreliable, especially when adverse personal consequences would likely follow a confession of an omission to perform that duty. Bevins testified that he had had all his men sign the register, but Tilford, a negro working with appellee at the time of his injury, testified he

had never done so. The evidence of Sharp must be likewise characterized and weighed in the same balance. Self-interest seems to have demanded a denial of Bevins' evidence. Then Sharp's testimony is weakened by the improbability, under the circumstances, of his statements that he never heard of the Workmen's Compensation Act, and, in view of the documents, is all but destroyed by his positive statements that he had never signed any sort of paper concerning the matter. The evidence of Cook as to conversation with Dr. Blackburn, while in the main not very material, may be said to be offset by the latter's testimony that the subject was not mentioned, although the doctor does not specifically refer to the conversation which Cook says took place when he went to make a final settlement with Sharp.

But the cogent corroborative circumstances are convincing that Sharp did execute the various documents described, and while, as stated, the pleadings do not authorize their consideration on an issue of estoppel, and consequently to bring the case within the authorities cited in brief, those documents are competent evidence on the subject of whether plaintiff had in fact accepted the provisions of the Workmen's Compensation Act. That evidence overcomes his denial. It constitutes a concrete and palpable contradiction of his testimony, that he had not made the election to have recourse to the remedies provided by the Compensation Law, and a continuing ratification of that election.

We are therefore constrained to reverse the judgment upon the ground that the verdict on this issue was palpably against the evidence, as that term has been so often defined.

Judgment reversed.

Whole court sitting.