### Kentucky Road Oiling Co. v. Sharp.
(Decided Oct. 9, 1934.)

CRAWFORD, MIDDLETON, MILNER & SEELBACH and FIELD McLEOD for appellant.

CHAS. N. HOBSON, WILEY C. MARSHALL and H. A. SCHOBERTH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Otis Sharp suffered an injury by an explosion or flare of flame on a road-oiling machine. On a trial before a jury he recovered a judgment of the Kentucky Road Oiling Company for $20,000. It appealed. At that time the defense was a denial of negligence and a plea that its and his rights were controlled by the Workmen's Compensation Act (Ky. Stat. sec. 4880 et

seq.). In our opinion (Kentucky Road Oiling Co. v. Sharp, 244 Ky. 157, 50 S. W. (2d) 535) we said:

"If the plaintiff (Sharp) had accepted the provisions of the law, and was at the time he sustained the injuries working thereunder, he had surrendered his right to maintain the common-law action for damages, and had agreed to resort to the substituted remedy. * * * A marshaling of the facts on this issue, we believe, will sustain our decision. The question of estoppel argued in briefs is not involved, for it was not pleaded. The defense on this point was merely an affirmative plea of an election to work under the terms of the Workmen's Compensation Act, and that was traversed. Under the pleadings, the burden was upon the defendant to prove that the plaintiff had elected to accept compensation for injuries in accordance with the Compensation Act, and thereby had no right to maintain the suit."

After reproducing the substance of the evidence heard on this issue, we further said:

"But the cogent corroborative circumstances are convincing that Sharp did execute the various documents described, and while, as stated, the pleadings do not authorize their consideration on an issue of estoppel, and consequently to bring the case within the authorities cited in brief, those documents are competent evidence on the subject of whether plaintiff had in fact accepted the provisions of the Workmen's Compensation Act. That evidence overcomes his denial. It constitutes a concrete and palpable contradiction of his testimony, that he had not made the election to have recourse to the remedies provided by the Compensation Law, and a continuing ratification of that election. We are therefore constrained to reverse the judgment upon the ground that the verdict on this issue was palpably against the evidence, as that term has been so often defined."

On the return of the case to the circuit court, the Kentucky Road Oiling Company amended its answer, wherein it alleged that through the Ætna Life Insurance Company, the insurance carrier, Sharp entered into an agreement for the payment to him of compensation under the Workmen's Compensation Act of $15

a week during his total disability, and that the agreement was evidenced by the execution and delivery by the parties of form No. 9, and it was examined and approved by the Workmen's Compensation Board, and thereafter Sharp was paid and accepted the benefits of the payments under the Workmen's Compensation Act, and executed receipts, approved by the Workmen's Compensation Board, aggregating $197.14. These facts were relied upon as an estoppel and a bar of his right to maintain the action.

In addition to traversing the plea of estoppel, Sharp alleged that, after he had sustained his injuries, an agent of the Kentucky Road Oiling Company came to his bedside, "and then and there falsely and fraudulently represented to the plaintiff that said defendant would continue to take care of said plaintiff during said illness and incapacity by paying a portion of his regular wages; said defendant then and there falsely and fradulently represented that said defendant would stand by plaintiff and care for him and his said family until plaintiff had recovered," and he had accepted the checks alluded to in the amended answer, "believing and relying on said assurance and representations of said defendant," and he was not advised and did not know that the checks had any connection with said Workmen's Compensation Act; he relied on "the foregoing facts in bar of any estoppel pleaded by the defendant."

On another trial the jury returned a verdict for the Kentucky Road Oiling Company. Sharp filed a motion and grounds for a new trial, supported by affidavits of himself and counsel, claiming that since the return of the verdict he had discovered the names of two important witnesses, Irvine Hughes and Horace Buckner, by whom he could prove certain facts. The affidavits of Hughes and Buckner were filed in corroboration. The court awarded him a new trial. And, when the case was again tried, a verdict in his favor of $25,000 was returned by the jury. This appeal is prosecuted from the judgment entered in accordance with this verdict.

The evidence heard on the first, second, and third trial as to the issue raised by the plea of estoppel is identical. The claimed newly discovered evidence did not relate to this issue.

Inasmuch as the substance of the evidence is accurately stated in our former opinion, we shall not

reproduce it, except as it is necessary and pertinent to a consideration and discussion of the decisive issue of estoppel.

Charles Beaven, a foreman of the Kentucky Road Oiling Company, testified that Sharp had signed, in 1928, the compensation register of the Kentucky Road Oiling Company. Sharp testified he did not sign it at any time. We shall accept Sharp's statement as to this question. It is not disputed that, after Sharp sustained his injuries, he was delivered seven checks aggregating $197.14; four of them were received and accepted by him in person; receipts for two of them were signed by him in person; two of the checks were indorsed by him in person. To one of the receipts Sharp's name was signed and indorsed on the accompanying check by Leslie Perkins at the request of Sharp and in his presence. To still another his name was signed to the receipt and the check indorsed in his name by Leslie J. Blackburn, at the request of Sharp and in his presence. It is admitted by Sharp that the other three checks and the receipts therefor were signed and the checks indorsed by others for his use and he had received the proceeds of them. The seven checks and receipts attached thereto are identical, except in the amounts and dates, and except the last receipt. It reads:

Sharp No. 7.

Not valid unless both the attached and endorsed receipts are signed. This draft properly endorsed if sent direct to

The Hartford-Ætna National Bank of<br>Hartford, Conn.

Will be paid at par, in New York Funds.
Lexington, Ky. Sept. 30th, 1929
No. 845206
On Demand
Pay to the order of
Otis Sharp
The sum of Two and 14/100 . . . . . Dollars $2.14

      (On account of           )
      (Policy                   )
      (Certificate, No. C--0117500  )

In Full Payment of Compensation as per Receipt on the back hereof

| Key No. | Class | File Number | Assured | Claimant | Date of Acc. of Loss |
|---|---|---|---|---|---|
| 34 | C | 27158 | Ky. Road Oiling Co. | Otis Sharp | 6—17—29 |

To the Æna Life Insurance Company
Accident & Liability Department
Hartford, Conn.

[Signed] J. W. Cooke
Adjuster.

(Said check was endorsed on the back as follows:)

Notice to Banks

The attached receipt and the following release must be signed by the payee before payment·of this draft.

Final Compensation Settlement Receipt

Do not sign this receipt unless you intend to end payments of compensation and close the case.

Policy No. C-0117500

Received of Kentucky Road Oiling Co. the sum of Two and 14/100..........Dollars making in all with weekly payments received by me the total sum of One Hundred Ninety Seven & 14/100 Dollars, in settlement and satisfaction of all claims for compensation or damages, subject to review as provided by Law, on account of injuries suffered by Otis Sharp, on or about the 17th day of June, 1929, while in the service of said aforesaid.

Witness my hand this ——— day of ———, 19—.

[Signed] Otis Sharp
(Sign here)

Compensation in accordance with the Compensation Act, was paid to Sharp by the checks at the rate of $15 a week, and as it appears from the quoted receipt, he received $2.14 on the final settlement. Every receipt except for the $2.14 contains these words: "Receipt on account of Compensation." It will be noted the receipt for the $2.14 check contains the words: "Final Compensation Settlement." The fact this receipt is for only $2.14 corroborates strongly the statement (to which we shall hereafter allude) of Cooke to the effect that in the office of Dr. Blackburn he and Sharp discussed with each other the subject of the final payment. The amount of the $2.14 receipt is explicable on no other hypothesis than that it was the balance due

*No Protest*

Sharp on a final settlement under form No. 9 and that he accepted it as such. This is corroborated by the evidence showing thereafter the payments to him ceased and he returned to work of the company.

Form No. 9 purports to have been signed by the Kentucky Road Oiling Company by Ætna Life Insurance Company, by Paul Kelly, and Otis Sharp. To the right of these signatures is this statement: "Signed and in the presence of S. A. Blackburn, Versailles, Kentucky, ———— day of July, 1929."

S. A. Blackburn was the physician who attended and treated Sharp from the time he sustained his injuries until Blackburn reported the completion of his treatment of Sharp, and Sharp returned to his work.

J. W. Cooke, an adjuster for the Ætna Life Insurance Company, handled for the Kentucky Road Oiling Company the claim of compensation of Sharp. He called on Dr. Blackburn at his office and requested him, as Sharp's attending physician, to get the latter to sign form No. 9, which is the agreement of the company to pay compensation under the Workmen's Compensation Act, and of Sharp to accept pay thereunder. Cooke signed all the checks which were delivered to, and accepted by, Sharp, under this agreement, beginning July 10, 1929, up to and including September 24, 1929, or a period of fourteen weeks and one day. The day before Dr. Blackburn mailed a statement of his account for services rendered Sharp, Cooke, Sharp, and Dr. Blackburn were in the office of Dr. Blackburn. At that time Cooke examined the scars on Sharp's body and discussed with him the making of the final settlement under form No. 9. On this occasion Dr. Blackburn informed Cooke when Sharp would be able to go back to work. Cooke testified a final settlement under the Workmen's Compensation Law was made with Sharp, subject to be reopened if he (Sharp) "showed that he was worse hurt." At that time Sharp acknowledged in the presence of Cooke that he had signed form No. 9. Dr. Blackburn in Sharp's presence, "just said that he got Otis to sign that." Two of the checks were delivered in advance of the receipt by the Workmen's

Compensation Board, in August, of form No. 9. Dr. Blackburn testified he made a report of Sharp's injuries. It was made on a blank of the Workmen's Compensation Board. He identified form No. 8 as a report made by him. On the second trial, Dr. Blackburn was asked:

"Q. Did you know at the time you were treating Mr. Sharp that he was being paid under the Workmen's Compensation Law? A. Yes, sir.

"Q. Under the Workmen's Compensation Law? A. Yes, sir.

"Q. Did you discuss that with Mr. Sharp? A. Yes, sir; he told me he was getting something out of the Workmen's Compensation."

He admitted on the third trial the foregoing questions were propounded to and answered by him on the second. On the second trial Dr. Blackburn was asked and answered thus:

"Q. Did Mr. Cooke at one of his early visits to you ask you to assist him to get Compensation Form No. 9 signed by Mr. Sharp? A. I think he did, I don't recall.

"Q. An agreement on the Workmen's Compensation form? A. I think he did, I don't recall.

"Q. Doctor, I will ask you if you witnessed Form No. 9, a photostatic exhibit of which I show you, and which was marked 'Exhibit B No. 9—A,' on the former trial? A. It resembles mine, but I don't think it is mine. I testified to that on the last trial.

"Q. You said it looked like yours? A. Yes, sir.

"Q. This admittedly is your signature, which I showed you here stamped 'received July 16th, 1929' and identified 'Exhibit Blackburn A?' A. Yes sir. * * *

"Q. I will ask you again if that [on Form No. 9] is your signature? A. I don't thing so. * * *

"Q. To go back to that signature on Form No. 9, that we have just shown you, Doctor, does that signature look like yours [indicating]? A. Resembles it some; yes, sir.

"Q. And is all hooked up together with the way you generally write? A. Yes, sir.

"Q. And it looks like that signature which you admit as yours on that letter, isn't that so? A. Well, it is a matter of opinion whether it looks like it or not. * * *

"Q. And you made your report on Workmen's Compensation Form No. 9 and sent them to Cooke? A. Yes, sir.

"Q. Relative to Sharp? A. Yes, sir.

"Q. And Cooke asked you to explain the matter to Mr. Sharp? A. I think so, I don't recall."

Form No. 9 purports not only to have been signed in the presence of Dr. Blackburn, but he admits his signature thereto is "all hooked up together," the way he generally writes it, and that Mr. Cooke requested him to have Sharp sign it and he mailed it in to Cooke or the Ætna Life Insurance Company. The checks received and accepted by Sharp, the receipts attached thereto when he received the checks, including the "Final Compensation Receipt," the presence of Sharp in the office of Dr. Blackburn with Cooke, the conversation occurring there, the statements of Cooke, and the statement of Dr. Blackburn's account, are not disputed by any evidence, except in so far, and to the extent, they are inferentially controverted by the statements of Sharp that he had never seen Mr. Cooke before the first trial; that he thought he was receiving his weekly wage, which he admits was $30 and not $15, the amount paid him under the Compensation Act; that he did not know or have information that he was receiving the $15 a week under the Workmen's Compensation Act; and that he believed he was receiving it under the promise of Mr. Allen that the company would take care of him. We have accepted as true the statements of Sharp that he did not sign the register which Beaven claims he signed. However, sections 4882, 4932, 4956, and 4957, Kentucky Statutes, recognize the right of Sharp and the Kentucky Road Oiling Company to agree with each other, even after he had sustained his injuries, for compensation in accordance with the terms of the act, as if Sharp had made a proper election by signing the register. Junior Oil Co. v. Byrd, 204 Ky. 375, 264 S. W. 846; Ramey v. Broady, 209 Ky. 279, 272 S. W. 740;

Kouns v. Josselson Bros., 236 Ky. 379, 33 S. W. (2d) 346.

Also, accepting Allen's statement to Sharp, as the latter claims it was made to him, that is, the company would take care of him, etc., we are not convinced that Allen's statement, if it were made by him, constituted fraud sufficient to avoid the plea of estoppel. Dotson v. Norman, 159 Ky. 789, 169 S. W. 527. No other or further evidence was offered or heard on the plea of fraud.

A charge of fraud may be predicated only upon nonperformance of a promise where the promise is accompanied by the present intention not to perform and is made to deceive the promisee. A promise in itself is not a false representation. Tanner v. Clark, 13 Ky. Law Rep. 922; Jones v. Brammer, 229 Ky. 649, 17 S. W. (2d) 736; Dolle v. Melrose Properties, Inc., 252 Ky. 482, 67 S. W. (2d) 706. The reliance of Sharp on Allen's promises is not evidence tending to sustain Sharp's plea of avoidance based upon either fraud or the non-fulfillment of Sharp's claimed promissory representation. Pine Mt. Iron & Coal Co. v. Ford, 50 S. W. 27, 21 Ky. Law Rep. 142; Dolle v. Melrose Properties, Inc., supra.

Sharp in neither his pleadings nor in his testimony pretends that any statement or representation by any one was made to him at any time calculated to, or did, induce him to accept the checks, sign the receipts, sign form No. 9, and carry out its provisions except the prior statement of Allen. He admits that after the date of form No. 9 he, without any other or further statement or representation of any one inducing him to do so, voluntarily accepted the checks and signed the receipts, and attempts to excuse himself solely on the basis he believed he was receiving his wages in accordance with the promise of Allen. If Allen made the statement as claimed by Sharp, the Kentucky Road Oiling Company fairly and fully carried out its duty thus imposed upon it, by the discharge of its obligation as prescribed by the Workmen's Compensation Act.

In essence, Sharp asserts that his signature to form No. 9 is a forgery. The testimony of Dr. Blackburn to the effect that he mailed in form No. 9 relieves the Kentucky Road Oiling Company and its agents, the

insurance carrier and its agents, of his charge that Sharp's signature to form No. 9 is a forgery.

> Reverting to the language of our former opinion: "Without detailing the evidence of these witnesses and the circumstances, we think it is shown beyond reasonable doubt that all these papers were signed either by Sharp, personally, or by his authority. * * * He could not but have known their contents and realized what they were."

Sharp admitted that he could read and write. "It is a rule in this state that a party who can read and has an opportunity to read the contract which he signs must stand by the words of his contract, unless he is misled as to the nature of the writing which he signs, or his signature is obtained by fraud." United Talking Machine Co. v. Metcalf, 164 Ky. 258, 175 S. W. 357, 358; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 12 L. R. A. (N. S.) 427; Blake v. Black Bear Coal Co., 145 Ky. 788, 141 S. W. 403; Case Mill Mfg. Co. v. Vickers, 147 Ky. 396, 144 S. W. 76; United Talking Machine Co. v. Metcalf, 174 Ky. 132, 191 S. W. 881.

> "The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." 6 R. C. L. Contracts, sec. 43.

These principles preclude Sharp from again saying he did not know the contents of form No. 9 and had no knowledge of the fact the checks were being paid to, accepted, and receipted for by him, under the Workmen's Compensation Act. Aside from this, the first appeal becomes the law of the case, since the facts and circumstances on the second and third trial in relation to this topic are substantially the same as those on the first one. United Talking Machine Co. v. Metcalfe, 174 Ky. 132, 191 S. W. 881; Louisville Fire Brick Works v.

Tackett, 216 Ky. 712, 288 S. W. 665; Robinson v. Chesapeake & O. R. Co., 227 Ky. 458, 13 S. W. (2d) 500; Murphy v. Pinson, 231 Ky. 461, 21 S. W. (2d) 824; Culton v. Napier, 242 Ky. 683, 47 S. W. (2d) 519; Louisville & N. R. Co. v. Cornett's Adm'r, 237 Ky. 131, 35 S. W. (2d) 10; Louisville & N. R. Co. v. Rowland's Adm'r, 227 Ky. 841, 14 S. W. (2d) 174.

Although the plea of estoppel was not interposed on the first trial, the interpretation of the evidence on the first appeal constitutes the law of the case in respect thereto, and thereafter controls, not only the circuit court, but this court as well. Louisville & N. R. Co. v. Cornett's Adm'r, supra; Louisville & N. R. Co. v. Rowland's Adm'r, supra.

No additional or new evidence on either the second or third trial was introduced tending to show any fact or circumstance in relation to this issue, though not made on the first, but raised by the plea of estoppel in the second and third, trial.

It is therefore apparent it is our opinion a peremptory instruction for the Kentucky Road Oiling Company should have been given on both the second and third trial, on the plea of estoppel, notwithstanding the evidence was conflicting on the issue of negligence, and that in behalf of Sharp was sufficient to authorize the submission of the case to the jury and sustain its verdict as to the issue of negligence.

The Kentucky Road Oiling Company, after Sharp's motion for a new trial was sustained, was granted permission to prepare and file a bill of exceptions, including the bill of evidence, which it did within the time and in the manner authorized by the Civil Code of Practice (sections 334, 335, 337). After a verdict in favor of Sharp was returned by the jury for the $25,000 on the third trial, within the time and manner required by the Code, it filed motion and grounds for a new trial, which were overruled. And, within the time provided in such cases, it filed a bill of exceptions and a bill of evidence, embracing the evidence introduced on both the second and third trial, and entered a timely motion to substitute the verdict of the jury on the second, for that returned on the third trial. This motion was overruled.

Since it was entitled to a peremptory instruction at the conclusion of all of the evidence on both the sec-

ond and third trial on the plea of estoppel, though the evidence of Sharp abundantly established negligence of the company as the proximate cause of Sharp's injuries, the court erred in granting a new trial to Sharp and also in refusing to substitute the verdict in the second for the third trial. Sharp's remedy for relief was the reopening of his case under section 4902, Kentucky Statutes.

Wherefore the judgment is reversed for proceedings consistent with this opinion.