## City of Ludlow v. Albers.

(Decided Nov. 12, 1935.)

RICHARD B. CARRAN and JACKSON & WOODWARD for appellant.

BLAKELY & MURPHY for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

John C. Albers brought this action against the city of Ludlow to recover damages for injuries which he alleged he received when an automobile in which he was a passenger struck a hole in the street and went over an embankment. The accident occurred about 3 o'clock on Sunday morning, November 15, 1931, following a party at the home of Joseph Keiser which appellee had attended. He lived in Cincinnati, and had driven the automobile to the Keiser home on Saturday night, taking with him his wife, his brother, Joseph Albers, and Gus Gilbert. Intoxicating drinks were served at the party, and he admitted that he drank freely. On the return trip his brother, Joseph Albers, took the wheel, and after the automobile had traveled about 300 feet from the Keiser home, it went over a steep embankment on the left side of the street in the direction in which it was traveling, and into Ludlow Lagoon. Joseph Albers admitted that he had taken several drinks during the night, but denied that he was drunk. It was appellee's theory that the left front wheel of the automobile struck a hole in the street and was deflected to the left, and ran over the embankment before the driver could regain control of it.

There have been two trials. At the first trial appellee recovered a judgment for $1,000, and that judgment was reversed on the ground that the evidence failed to show that the alleged defective condition of the street was the proximate cause of his injury, and it was held that the trial court erred in overruling the city's motion for a directed verdict in its favor. City of Ludlow v. Albers, 253 Ky. 525, 69 S. W. (2d) 1051, 1054. At the second trial the court again submitted the case to the jury, which returned a verdict in favor of Albers for the sum of $1,500. The city has appealed, and its chief complaint is of the alleged error of the trial court in again overruling its motion for a directed verdict. Its contention is that the evidence on the second trial did not differ materially from the evidence produced at the first trial, and therefore the opinion on the first appeal is the law of the case and controlling.

The opinion on the former appeal fully sets out the facts, and if the facts and circumstances found in the present record are substantially the same as those on the first trial, that opinion is the law of the case and governs. Baker v. High Splint Coal Co., 258 Ky. 786,

81 S. W. (2d) 577; Kentucky Road Oiling Co. v. Sharp, 257 Ky. 378, 78 S. W. (2d) 38; Grand Lodge, Brotherhood of Railroad Trainmen, v. Bash, 256 Ky. 511, 76 S. W. (2d) 604; Louisville & N. R. Co. v. Cornett's Adm'r, 237 Ky. 131, 35 S. W. (2d) 10; Robinson v. Chesapeake & O. R. Co., 227 Ky. 458, 13 S. W. (2d) 500.

No new witnesses were introduced at the second trial, and three of the witnesses who testified for the plaintiff at the first trial were not called at the second trial. The testimony of the witnesses who did testify at the second trial is not materially different from their testimony at the first trial. The only suggestion of a material difference is found in the testimony of Joseph Albers. On the first trial he testified that after he had passed the manhole in the center of the street, it seemed that the left front wheel of the automobile went into a hole and "my steering wheel jumped right up from there and run to the side of the road, I steered, trying to get back to the center of the road, and as I did it seemed like the back end had slipped over and I couldn't get it righted and it turned over." On the second trial he testified as follows:

"As I drove over this manhole, I hit a hole I judge anywhere from five to nine feet past this manhole. My left front wheel went into this hole. I couldn't say just how deep the hole was, there was water in it, but it gave an awful jar and I lost the steering wheel and it threw the rear end to the left side of the road. It just felt like a sudden drop. It went down a good bit. It throwed my rear end, the left front wheel after it went in the hole, I lost control of the steering wheel and it jerked my hand and throwed the back of the car to the left of the road. Then the car turned over when I got to the bank. I tried to right it and it turned over and dumped into the lagoon."

Over appellant's objection, he stated that it was his opinion that the automobile went over the embankment because the left front wheel struck the hole in the street. Although he stated positively on the second trial that the left front wheel struck a hole in the street, and on the first trial that it seemed to him that it struck a hole, when all of his testimony and the testimony of the other witnesses is considered, the difference is not sufficiently material to take the case out of the rule

heretofore stated and to authorize its submission to the jury. The evidence on the second trial, just as on the first trial, was uncontradicted, that the automobile went over the embankment at a point near an electric light pole nearly 100 feet from the alleged hole in the street, and that the automobile traveled along the brink of the embankment on the left side of the street for a distance of 25 or 30 feet before it struck the ends of old railroad ties which protruded several inches over the bank. The automobile swerved over the bank at the point where the wheels struck the ties. In discussing this evidence in the opinion on the former appeal, it was said:

"The street, the embankment, and the route traveled by the automobile, from the point where it left the street to where it stopped in the lake, was inspected on the night of the accident, the morning following, and within a reasonable time immediately thereafter, by a large number of disinterested witnesses. There were two electric light poles near the street on the side of the embankment; one of which was about 10, and the other about 110, feet from a manhole, in the center of the street. It was abundantly proven the track of the automobile traveled along the brink of the embankment west of the manhole, before it reached the manhole and passed along on the soft ground and continued on the edge of the embankment beyond the manhole for a distance from 25 to 30 feet or more to where the end of old ties protruded about 12 to 18 inches over the bank, when the wheels of the car struck the ties and caused it to swerve over the bank. This evidence is uncontradicted, and after it was introduced no witness was called in rebuttal. Even if the car 'straddled' the manhole, ran into a hole in the street and swerved to the left, as it seemed to the Albers, or as it was felt by Helen Robertson, it is very plain the proximate cause of the car going over the embankment was the running it 25 to 30 feet or more on the margin of the bank, until it struck the end of the protruding ties. This testimony is corroborated by that of Helen Robertson, Margaret Kor, and Grace Bell, in that they say the car swerved and 'seemed' or 'felt' like it instantaneously went over the bank. The evidence showing the course and the place of the track of the automobile is without contradic-

tion except the Albers claim the automobile 'straddled' the manhole. Even if it be conceded it 'straddled' the manhole, ran into the holes in the street and swerved to the left, such fact neither explains nor accounts for the track of the automobile appearing in the soft ground on the margin of the bank for a distance of 25 or 30 feet, or as some witnesses say 40 to 50 feet, where the car wheels came in contact with the protruding ties, leaving marks thereon, then turning over the embankment into the lake The testimony of the Albers, and those who testified in their behalf, utterly fails to account for the automobile running in a direct course 25 to 30 feet or more on the edge of the bank, striking the ties, then leaving the road. Conceding the testimony of John and Joseph Albers to the effect the automobile 'straddled' the manhole, the right wheels running into the hole in the street and thereby causing the car to swerve to the left, contradicts or is in conflict with that in behalf of the city showing the wheels of the automobile passed to the left or west of the manhole, still that in behalf of the city showing the track of the automobile, for a distace north of the manhole from 25 to 30 feet, or as some witnesses put it 40 or 50 feet to the point where the left front wheel struck the protruding ties and instantly swerved over and down the bank into the lake, is uncontradicted and the witnesses testifying thereto are neither impeached nor discredited. Such evidence establishes the negligence of the driver of the automobile in the driving on the brink or margin of the bank, allowing it to strike the ties thereby causing it to swerve over and down the bank as the contributory, if not the primary, cause of the injury of Albers. * * * A fair and unbiased consideration of the evidence in behalf of Albers is convincing that it amounts to no more than a mere supposition that the hole in the road caused the car to swerve and go over the bank.''

The evidence on the second trial being substantially the same as the evidence on the first trial, the opinion on the former appeal governs, and it follows that the trial court erred in overruling appellant's motion for a directed verdict in its favor.

Judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.