Hollis SMITH, Appellant,

v.

BETHLEHEM SAND & GRAVEL COMPANY, LLC, Appellee.

No. 2009–CA–000913–MR.

Court of Appeals of Kentucky.

April 22, 2011.

Stephen H. Miller, Jeffrey G. Stovall, Louisville, KY, for Appellant.

Matthew F. Coogle, Louisville, KY, for Appellee.

Before TAYLOR, Chief Judge; MOORE and WINE, Judges.

## OPINION

MOORE, Judge.

This matter focuses upon the validity and enforceability of a guaranty agreement between Bethlehem Sand & Gravel Co., LLC, and Hollis Smith, which purports to hold Hollis absolutely and unconditionally liable for the balance of a $500,000 promissory note executed on September 15, 2005, between Bethlehem, and Hollis's company, Brooks Sand & Gravel, LLC. By way of background, Hollis signed the promissory note in question on behalf of Brooks as its president and chief executive officer; the promissory note contained a default provision which accelerated all amounts owed upon any event of default, including the filing of a bankruptcy petition; and Brooks defaulted on that note by declaring bankruptcy on February 9, 2006. Bethlehem chose not to participate in Brooks' bankruptcy, and instead filed suit against Hollis in Jefferson Circuit Court to collect the balance of the note under the terms of the guaranty agreement. The parties filed cross-motions for summary judgment. And, in a February 26, 2009 order, the circuit court upheld the guaranty agreement and granted summary judgment in favor of Bethlehem.

Hollis now appeals, contending, as he did before the circuit court, that the guaranty agreement is invalid and unenforceable. However, after careful review of the record, we find no merit to Hollis's arguments. Therefore, we affirm the circuit court's decision. Additional facts of this case will be discussed as they become relevant to our analysis.

## STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Summary judgment "is proper only where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 479 (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)).

On appeal, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law.

*Scifres v. Kraft,* 916 S.W.2d 779 (Ky.App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. *Goldsmith v. Allied Building Components, Inc.,* 833 S.W.2d 378 (Ky.1992). Our review is *de novo.*

■ Likewise, the issues in this case involve the interpretation and meaning of certain terms in statutes and contracts. The interpretation of a contract or statute is a question of law for the courts and is subject to *de novo* review. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 647 (Ky.2007).

## ANALYSIS

On appeal, Hollis offers three arguments as to why the guaranty agreement should not be enforced against him: 1) the terms of the guaranty agreement do not conform to the standards set forth in Kentucky Revised Statute (KRS) 371.065; 2) the promissory note between Brooks and Bethlehem was itself unenforceable for want of consideration; and 3) Bethlehem is equitably estopped from attempting to enforce the guaranty because it failed to assert a claim in Brooks' bankruptcy proceedings, which have now concluded. We address these arguments in that order below.

**1. KRS 371.065 does not invalidate the guaranty agreement.**

■ Hollis invoked KRS 371.065 in his response to Bethlehem's motion for summary judgment and as a basis for his own motion for summary judgment. In relevant part, KRS 371.065 provides:

(1) No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writ-

ing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates....

Hollis asserted that the guaranty agreement that he signed in this matter was not written on an instrument being guaranteed and, alternatively, did not expressly refer to an instrument being guaranteed. As such, he reasoned that the guaranty agreement was subject to the provisions of KRS 371.065, *i.e.,* that it was required to be 1) signed by him; and 2) in writing; and to contain provisions specifying 3) the amount of his maximum aggregate liability; and 4) the date on which the guaranty terminated. In this vein, Hollis offered only one reason as to why this agreement was unenforceable, per KRS 371.065: He believed that the date specified in the guaranty agreement was invalid. This date, as it appears in the agreement, is "September ——, 2010."

The circuit court disagreed with Hollis for two reasons. First, the circuit court considered the language of the guaranty agreement itself, which refers to and purports to guarantee a $500,000 term note from Brooks to Bethlehem. The circuit court also considered a document, entitled "Schedule 1," which Bethlehem attached as an exhibit to its motion for summary judgment, and which the guaranty agreement itself referenced in three places and recited was "attached to and made a part of this Guaranty Agreement." The Schedule 1 document describes the obligations set forth in the guaranty agreement, and it explicitly refers to the instrument guaranteed under that agreement: "Promissory Note dated as of September 15, 2005, made by Borrower to the order of Lender in face principal amount of $500,000.00 and

maturing on September 15, 2010 . . . ."[1] In light of the combined language of the guaranty agreement and Schedule 1 document, the circuit court held that the guaranty agreement did effectively reference the instrument it guaranteed within the meaning of KRS 371.065, rendering the remainder of the statute inapplicable.

Second, the circuit court held that even if the remaining provisions of KRS 371.065 could apply in this instance, "September, 2010" qualified as an effective termination date. Hollis's argument, therefore, had no merit.

On appeal, Hollis contends that the circuit court erred as a matter of law when it held that KRS 371.065, and particularly its termination date requirement, did not apply to the guaranty agreement in this matter. In support, Hollis argues that 1) the circuit court should not have considered the Schedule 1 document because he did not initial it and it contained no signatory line; 2) the last line of the guaranty agreement states: "IN TESTIMONY WHEREOF, witness the signature of Guarantor as of the date disclosed by the notarial certificate below . . ." but, the guaranty agreement itself was not notarized; and 3) the $500,000 promissory note, signed by Hollis in his capacity as the CEO of Brooks, did not reference and incorporate the guaranty agreement. Finally, based upon his assertion that KRS 371.065 must therefore apply to the guaranty agreement, Hollis restates his ultimate argument: that "September ——, 2010," is not a valid termination date under the statute.

■ With respect to Hollis's argument that the *circuit court should not have con*sidered the Schedule 1 document because he did not initial it and it contained no

signatory line, we disagree. In *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 615 (Ky.2004), the Supreme Court explained the underlying purpose of KRS 371.065: it "is a consumer-protection provision designed to protect the guarantor by reducing the risk of a guarantor agreeing to guarantee an unknown obligation." Stated differently, KRS 371.065 does not seek to "eliminate" unknown obligations; it only seeks to reduce the risk. *Alliant Tax Credit Fund 31–A, Ltd. v. Nicholasville Community Housing, LLC,* 663 F.Supp.2d 575, 582 (E.D.Ky.2009) (citing *Wheeler,* 127 S.W.3d at 615).

In that light, the guaranty agreement in this matter, combined with its reference to "Schedule 1," comports with that underlying purpose. The agreement itself refers to, and purports to guarantee, a $500,000 term note from Brooks to Bethlehem. The guaranty agreement also makes three references to its "Schedule 1" and it urged Hollis, before signing, to reference "Schedule 1" for a further description of his obligations, as guarantor, under that note. The Schedule 1 document describes those obligations with particularity and appears to be the final page of the guaranty agreement. Hollis signed the guaranty agreement. And, while Hollis argues that he did not *initial* the document entitled "Schedule 1" and that it contained no signatory line, Hollis does not argue and the record does not support that he failed to receive the document entitled "Schedule 1" with the guaranty agreement or that Schedule 1 was not a part of the guaranty agreement that he signed. Nor, for that matter, does Hollis present any authority supporting that every page of a guaranty agreement must be initialed to become an effective part of that agreement. Conse-

---

1. The guaranty agreement and the document purporting to be its Schedule 1 are both written in the same font and, where the last page

of the guaranty agreement is enumerated "8," the one-page document entitled "Schedule 1" is enumerated "9."

quently, the circuit court did not err when it relied upon the Schedule 1 document in its construction of this guaranty agreement. We agree with the circuit court's conclusion that Schedule 1 is effectively a part of the guaranty agreement.

Furthermore, we agree that the guaranty agreement does reference the $500,000 promissory note and Hollis's obligations under that note. Schedule 1 explicitly refers to the instrument being guaranteed by stating that "[T]he 'Obligations' referred to in the foregoing Guaranty Agreement . . . are as follows: . . . Promissory Note dated as of September 15, 2005, made by Borrower to the order of Lender in face principal amount of $500,000.00 and maturing on September 15, 2010. . . ."

Hollis presents no authority supporting his second contention, *i.e.*, that the guaranty agreement, which he admittedly signed, was not exempt from KRS 371.065 or otherwise unenforceable because it was not notarized. CR 76.12(4)(c)(v) states, in part, that an appellant's brief shall contain "[a]n 'ARGUMENT' conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law. . . ." Because Hollis offers no argument relating to this point, we need not address it. *See Cherry v. Augustus*, 245 S.W.3d 766, 781 (Ky.App.2006).

Finally, Hollis's third argument misreads the plain language of KRS 371.065. The statute does not require an instrument to reference or incorporate a separate agreement guaranteeing it. It merely specifies the form that a guaranty agreement must take, in the event that the guaranty agreement does not reference or is not written on the guaranteed instrument.

In sum, the guaranty agreement in this matter effectively referenced the instrument it guaranteed, per KRS 371.065.

Hollis has offered no reason to subject the guaranty agreement to the additional provisions of that statute, particularly its requirement to specify an effective termination date. The circuit court did not err when it upheld the validity of the guaranty agreement within the context of KRS 371.065, and we need not address whether "September ——, 2010," constitutes an effective termination date under that statute.

## 2. The record supports that Brooks received consideration for the note.

"Consideration" is "[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips*, 294 Ky. 323, 171 S.W.2d 458, 464 (1943). And, generally speaking, a substantial failure of consideration ordinarily justifies rescission of a contract. *O.P. Link Handle Co. v. Wright*, 429 S.W.2d 842, 845 (Ky.1968).

Hollis raised the defense of failure of consideration in both his response to Bethlehem's motion for summary judgment and in support of his own motion. He made two separate arguments: 1) Brooks had never actually received the $500,000 described in the promissory note between Brooks and Bethlehem; and 2) even if Brooks had received the $500,000, the guaranty agreement required new consideration because he signed it the day after he executed the note on behalf of Brooks. The circuit court concluded that neither of Hollis's arguments had merit. We find no error.

As to his first argument, Hollis supports that Brooks never actually received the $500,000 described in the promissory note merely by stating this in his pleadings. He directs our attention to nothing else in the record that would substantiate this assertion. Pleadings are not evidence. *Educational Training Systems,*

*Inc. v. Monroe Guar. Ins. Co.,* 129 S.W.3d 850, 853 (Ky.App.2003). And, it is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings, but must, by counter-affidavit or otherwise, show that evidence is available justifying trial of the issue involved. *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.,* 281 S.W.2d 914 (Ky.1955).

Moreover, Bethlehem's motion for summary judgment did properly support that there was consideration for the $500,000 note. As supporting exhibits, Bethlehem included 1) Brooks' successful bankruptcy petition, in which Brooks represented that it owed Bethlehem a valid debt of $500,000; and 2) the promissory note itself, which Hollis signed as Brooks' president and CEO and which recited that it was executed "for value received."

■ As to his second argument, it is true that, as a general rule,

[i]f the original debt or obligation is already incurred or undertaken previous to the collateral undertaking, then there must be a new and distinct consideration to sustain the guaranty; but if the original debt or obligation be founded upon a good consideration, and at the time when it is incurred or undertaken, or before that time, the guaranty is given and received,—enters into the inducement for giving credit or supplying goods,—then the consideration for which the original debt is incurred is regarded as a consideration for the guaranty.

*Walter A. Wood Mowing and Reaping Machine Co. v. Land,* 98 Ky. 516, 32 S.W. 607, 608, 17 Ky. L. Rptr. 791 (1895) (quoting 2 Parsons on Contracts at 7 (7th ed. 1883)).[2]

It is equally true, however, that where the consideration between the principal obligor and the creditor has passed and become executed before the contract of the guarantor is made and the guaranty was part of the inducement to the creation of the original debt, such consideration is sufficient to the contract of the guarantor. *See Snowden v. Leight,* 5 Ky. L. Rptr. 121 (1883). Such is the case with the guaranty agreement at issue in this matter, which Hollis signed and acknowledged, because it is prefaced with the following statement: "WHEREAS, Lender is unwilling to extend credit to Borrower unless the undersigned, HOLLIS SMITH (the "Guarantor"), shall guarantee payment to Lender of the Obligations, as hereinafter defined...."

Furthermore, in its own analysis of this argument, the circuit court found the one-day delay between Hollis's execution of the $500,000 promissory note on behalf of Brooks and Hollis's execution of the guaranty agreement in his individual capacity to be immaterial and warrant no further consideration. This, the circuit court reasoned, is because it considered the promissory note and guaranty agreement to be a part of the same transaction. *See, e.g., Spreen v. Ruth,* 14 Ky. L. Rptr. 154, 19 S.W. 583, 584 (1892) (holding that a land sale contract, executed on June 24, 1887; a conveyance of the land, executed on June 28, 1887; and a guaranty, executed on July 2, 1887, "all evidenced the contract between the parties, and must be treated as one agreement."). We are inclined to agree with the circuit court's conclusion because the guaranty agreement recited that it was designed to induce Bethlehem to contract with Brooks; it references the $500,000 promissory note; and because

---

**2.** *Land* draws this quote from what it refers to as 'Mr. Parsons['] ... work on Contracts (volume 2, p. 7).' The *Land* opinion does not reference a specific edition as the source of this quote, but this language first appeared on page seven, volume two of the seventh edition of Mr. Parsons' work.

Hollis signed both of these documents for exactly the same purpose. As the first page of the guaranty agreement notes, "[T]he Guarantor [Hollis] is one of the members of Borrower [Brooks] and is financially interested in the business and affairs of the Borrower."

### 3. The record does not support that Bethlehem should be equitably estopped from enforcing the guaranty agreement.

■ The final argument Hollis raised below, and raises again on appeal, is that Bethlehem should be equitably estopped from enforcing their guaranty agreement. Hollis believes that this doctrine applies because Bethlehem chose not to participate in Brooks' bankruptcy proceeding, and asserts that, if Bethlehem had participated, Bethlehem could have satisfied all or part of the balance due under the terms of the promissory note.

The general rule of equitable estoppel was recently stated in *Fluke Corporation v. LeMaster*, 306 S.W.3d 55, 62 (Ky.2010):

Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party[.] The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

(Internal citations omitted.)

■ That said, the circuit court thoroughly addressed this portion of Hollis's argument, and we adopt its reasoning:

Under Kentucky law, "a party who can read and has an opportunity to read the contract which he signs must stand by the words of his contract ..." *Kentucky Road Oiling Co. v. Sharp* [257 Ky. 378], 78 S.W.2d 38, 42 (Ky.1934) (citations omitted).

Here, as noted by [Bethlehem], the Guaranty signed by [Hollis] expressly states that payment is required from [Hollis] regardless of [Bethlehem's] attempts at collection and of [Hollis's] or Brooks' bankruptcy:

This Guaranty Agreement is a guaranty of payment, not of collection, and Guarantor therefore agrees that Lender shall not be obligated prior to or as a condition to seeking recourse against or receiving payment from any Guarantor, to do any of the following (although Lender may do so, in whole or in part, at its sole option), all of which are hereby unconditionally waived by Guarantor:

1. take any steps whatsoever to collect from the Borrower or to file a claim of any kind against the Borrower; or ...

3. in any other respect exercise any diligence whatever in collecting or attempting to collect any of the obligations by any means.

The liability of Guarantor for payment of the Obligations shall be absolute and unconditional and, subject to the Maximum Guaranteed Amount, nothing whatever except actual full payment to the Lender of all

of the obligations guaranteed by Guarantor hereunder shall operate to discharge any Guarantor's liability. Accordingly, Guarantor unconditionally and irrevocably waives each and every defense which, under principles of guarantee or suretyship law, would otherwise operate to impair or diminish the liability of Guarantor. Without limiting the generality of the foregoing, Guarantor agrees that none of the following shall diminish or impair the liability of the Guarantor in any respect (all of which may be done without notice to Guarantor of any kind): ...

the voluntary or involuntary discharge or release of any of the Obligations, or of any person liable therefore, by reason of bankruptcy or insolvency laws or otherwise....

Pursuant to the clear terms of the Guaranty, [Bethlehem] had no duty to take action against Brooks in Bankruptcy Court or otherwise, nor did [Hollis] have a right to rely on the bankruptcy proceedings of Brooks to settle all of [Hollis's] outstanding claims. [Hollis] has also not shown that he changed his position in reliance upon an act or omission of [Bethlehem]. Such a showing is a required element of promissory [and equitable] estoppel. *McDonald v. Goodman,* 239 S.W.2d 97 (Ky.1951). As such, the doctrine of equitable estoppel does not prevent [Bethlehem] from enforcing the Guaranty as a matter of law.

## CONCLUSION

For these reasons, the February 26, 2009 opinion and order of the Jefferson Circuit Court is hereby AFFIRMED.

ALL CONCUR.