**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Jun 04 2012, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**MICHAEL W. MCCLAIN**
Ballinger McClain, PLLC
Louisville, Kentucky

**STEVEN P. LANGDON**
McNeely Stephenson Thopy & Harrold
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**STEVEN M. BADGER**
**JAMES P. MOLOY**
**NATHAN T. DANIELSON**
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KMC REAL ESTATE INVESTORS, LLC, GEORGE L. ALCORN, DAVID BERRY, DAVID BRITT, ABDUL G. BURIDI, JEFFREY CAMPBELL, KEITH CARTER, ALEXANDER DIGENIS, THOMAS ECKERT, SATYA GARIMELLA, EUGENE GILES, SHAWN GLISSON, ELI HALLAL, JOHN HATEGAN, AMY HALLAL HENDERSON, SAMER HUSSEIN, ROBERT KARMAN, LESLIE STROUSE MATTINGLY, JOHN MCCONNELL, JULIO MELO, CHARLES OATES, BRIAN PARADOWSKI, RUKHSANA RAHMAN, SYED RAZA, LAWRENCE ROUBEN, JOHN RUMISEK, ANIL SHARMA, CHRISTODULOUS S. STAVENS, MIO STIKOVAC, and BRIAN THORNTON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Appellants-Respondents, | ) ) |
| vs. | ) No. 10A05-1109-MF-501 ) |
| RL BB FINANCIAL, LLC, | ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Roger L. Duvall, Special Judge
Cause No. 10D02-1102-MF-79

**June 4, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

A group of twenty-two physicians (collectively "Physicians") appeal the trial court's ruling granting summary judgment in favor of RL BB Financial, LLC ("Assignee Lender"). The Physicians argue that the personal guaranties they signed for a loan used to build a hospital are unenforceable on multiple grounds and that there is insufficient evidence to prove Assignee Lender's damages. We hold that the Physicians are bound by the enforceable guaranties that they signed and that there is sufficient evidence proving Assignee Lender's damages. The trial court did not err in granting summary judgment.

## Facts and Procedural History

Kentuckiana Investors, LLC ("KI") is a group of practicing physicians, including the twenty-two involved in this appeal. One of its purposes was to invest in the construction of a new hospital in Clark County, Indiana, that would be operated by Kentuckiana Medical Center, LLC ("Medical Center").

In the first half of 2007, the Physicians invested in KI, paying approximately $34,000 per unit of ownership. The KI Operating Agreement signed by each Physician

indicated that each investor's individual guaranty liability on mortgage debt incurred by Medical Center would be capped at four times each investor's capital contribution.

On June 21, 2007, Medical Center executed and delivered to Branch Banking & Trust Company ("Original Lender") a note in the principal amount of $21.5 million. The note was secured by a mortgage in Medical Center's real property and the proposed hospital building, which was to be constructed with the loan proceeds on the property. The mortgage was recorded the next day.

The Physicians signed personal guarantees of Medical Center's indebtedness to Original Lender, which explicitly state that they are to be governed by Kentucky substantive law. The guaranties were negotiated by Medical Center representatives and provided three tiers of liability, such that liability would be reduced over time as the hospital met certain cash flow targets. The actual amount of liability varied greatly from physician to physician, and oftentimes was much greater than the liability cap imposed under the KI Operating Agreement. *See* Appellee's App. p. 97, 103, 109, 115, 121, 127, 133, 139, 145, 151, 158, 164, 170, 176, 182, 188, 194, 200, 207, 213, 220, 226, 232, 238, 244, 250, 256, 262, 268. Notably, the Physicians were not represented by attorneys when reviewing and signing the guaranties. Br. of Appellants Buridi, et al. p. 7. Also, many of the physicians admitted that they did not read the guaranties before signing them. *Id.* at 621, 660, 674, 682, 686, 692. The guaranties were all dated June 21, 2007, and were made "to induce [Original Lender] to make the Loan to Borrower." *Id.* at 103. Three of the guaranties, however, were not signed until approximately three weeks later – those signed by Abdul G. Buridi, Amy Hallal Henderson, and Lawrence Rouben. *Id.* at 120, 181, 243.

On April 6, 2009, one of the Physicians, Alexander Digenis, sold three of his five membership units in KI to Chris Stavens, Eli Hallal, and Brian Thornton in accordance with the KI Operating Agreement. *Id.* at 660-61. Digenis attempted to contact Original Lender to inform them of the transaction, but he received no response. *Id.* at 661. Similarly, on May 1, 2010, Rukhsana Rahman sold all of her membership units in KI to Chris Stavens and Eli Hallal. *Id.* at 686. Shawn Glisson invested in five units of KI, but this investment was a joint investment with his equal business partner, so he contends he only owned two-and-one-half units of KI.

In 2010, RL BB Financial, LLC, ("Assignee Lender") purchased the loan from Original Lender. Medical Center then defaulted on its obligations under the note and mortgage by failing to make loan payments and failing to pay real-estate taxes. *Id.* at 414. Medical Center also filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Indiana on April 1, 2011, another event of default. *Id.* at 699. Medical Center admitted that it owes Assignee Lender the principal sum of $20,606,597.77, plus interest and other charges.

Assignee Lender filed a Complaint against Medical Center on February 23, 2011, seeking a judgment on the note in the amount of $20,606,598.00 and for foreclosure of a related mortgage and the appointment of a receiver. *Id.* at 46-51. Assignee Lender moved for summary judgment against the Physicians on May 17, 2011, seeking to enforce their individual guaranties. The trial court granted the motion.

The Physicians now appeal.[1]

---

[1] We note that the Physicians request oral argument in their Appellant's Brief. However, this is not the proper procedure for requesting oral argument because no motion was filed. Indiana Appellate

## Discussion and Decision

The Physicians contend that the trial court erred in granting summary judgment to Assignee Lender. Three of the arguments apply to the group of physicians as a whole: (1) the guaranties were entered into by agents who were acting outside the scope of their authority, rendering the guaranties void; (2) there is insufficient evidence to prove liability and damages; and (3) Assignee Lender failed to first exhaust its rights against Medical Center and execute on its collateral before enforcing the personal guaranties. The other three arguments apply only to individual Physicians: (1) the Buridi, Henderson, and Rouben guaranties were signed almost three weeks after the contract was executed and are therefore void for lack of consideration; (2) the Glisson guaranty is void in whole or in part for a unilateral mistake of fact; and (3) Digenis' and Rahman's transfer of ownership interest in their shares of KI reduces or eliminates their liability under their personal guaranties. We will address each argument in turn.

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind. 2009).[2] All facts established by the designated evidence, and all

---

Rule 52(B) states "A party's motion for oral argument shall be filed no later than seven days after: (1) any reply brief would be due under rule 45(B) . . . ." In any event, we find that oral argument is not warranted in this case.

[2] The guaranties specifically state that they are to be governed by Kentucky law. However, while the guaranties are governed by Kentucky law, "procedural and remedial matters are governed by the law of the forum state." *Ashley v. State*, 757 N.E.2d 1037, 1040 (Ind. Ct. App. 2001).

5

reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007).

## I. Physician Arguments

### *A. Validity of the Personal Guaranties*

The Physicians contend that the guaranties were entered into by Medical Center's management representatives acting as agents of the Physicians. They argue that the agents had no authority to negotiate and deliver the guaranties, and exceeded the scope of their authority, so therefore the guaranties should be nullified. We disagree.

Specifically, the Physicians contend that the terms of the guaranties were not authorized because the amount of their personal liability exceeded the cap outlined in the KI Operating Agreement. They argue that representatives from the Medical Center negotiated the terms of the guaranties on behalf of the Physicians, and were aware of the personal liability caps contained in the KI Operating Agreements. By negotiating a guaranty that exceeded that cap, the Physicians contend that the Medical Center agents were acting outside the scope of their authority. We find this argument to be without merit.

While Medical Center representatives negotiated the terms of the guaranties and delivered the guaranties to the Physicians, the guaranties were signed by the Physicians themselves, not Medical Center representatives. "Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). The signatures contained within the four corners of the

guaranties were those of the Physicians, so they were the ones who entered into the contract, not agents from the Medical Center on behalf of the Physicians.

Each guaranty also clearly stated the amount of individual liability each Physician was taking on. If the Physicians had read the guaranties, they would have been acutely aware of the personal liability that they were accepting by signing the guaranties. "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.* Just because the Physicians did not intend to contract to a higher amount of personal financial liability in the guaranties they signed with Original Lender does not change the fact that they did do so, and it does not allow us to construe the contract in a way that is at odds with its plain language. Failure to read the terms of the contract, as long as there was the opportunity to read it, is not grounds for nullification. *See Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 766 (Ky. Ct. App. 1985).

Regardless, there are some instances where a guarantor is not liable because of the actions of his agents who negotiated the agreement. The Physicians argue that this is one of those cases because Medical Center's agents negotiated the contract with the Original Lender in a manner they did not have the authority to do. They liken this situation to that in the Ohio case of *Becker v. Bank One, Steubenville, N.A.*, 1991 WL 16543 (Ohio Ct. App. Feb. 8, 1991). In *Becker*, only the signature page of a personal guaranty was sent to Becker's office and he was told it was "another partnership document [he] need[ed] to sign." *Id.* at *1. The signature page was later attached to a personal guaranty without Becker's knowledge or authority. *Id.* The trial court's verdict in favor of Becker was

upheld because "the guaranty transaction was entered into without [Becker]'s knowledge, authority or permission." *Id.* at *4.

However, the present case is clearly factually distinguishable from *Becker* because these guaranties were entered into with the Physicians knowledge, authority, and permission. The Physicians were not merely given a page to sign that was then attached to a personal guaranty; they were each given their own guaranty in whole to read and sign. *See, e.g.*, Appellee's App. p. 108 (each guaranty was notarized, authorizing that the Physician who signed the guaranty "acknowledged that he (or she) executed and delivered the foregoing instrument as his (or her) free and voluntary act and deed."). The terms were clearly spelled out, and any failure to read the terms of the guaranty by the Physicians was through no fault of the Original Lender. When the Physicians signed the guaranties, they did so with full knowledge and authority of their terms; they were not the victims of fraud, differentiating this case from *Becker*.

Finally, the Physicians argue that they need to conduct discovery to determine if there was the type of fraud that would place this case in the same category as *Becker* and relieve the Physicians of personal liability. But the record shows that each Physician had the entire guaranty in front of him when it was signed, *id.*, the Physicians themselves were the ones who signed the guaranties, and the Physicians do not contest these facts. Br. of Appellants Buridi, et al. p. 7. Further discovery is unwarranted.

We therefore take the terms of the guaranties as they are written, and we find that the trial court did not err in finding there is no issue of material fact that the Physicians should be held personally liable for the full amounts indicated in their guaranties.

*B. Sufficient Proof of Liability and Damages*

The Physicians also contend that there is insufficient evidence to prove the amount of damages that Assignee Lender has incurred. They argue that a single affidavit is not enough to verify that Medical Center is liable to Assignee Lender and that the amount of principal due is $20,606,597.77. We disagree.

Assignee Lender made a prima facie case showing liability and also the amount owed by Medical Center through the affidavit of Thomas Skoko. Appellee's App. p. 411-15. Skoko is an asset manager for Rialto Capital Advisors, LLC, a company to which Assignee Lender granted power of attorney to take all necessary actions with respect to the loan and loan documents at issue in this case. *Id.* at 411-12. As an asset manager for Rialto, Skoko is familiar with the loan, has the responsibility for collecting the loan, and has access to the accounts and records dealing with the loan. *Id.* at 412. Skoko therefore has personal knowledge as to the loan, and swore in his affidavit that as of February 8, 2011, Medical Center defaulted for failure to make payments according to the terms of the loan documents and failure to pay real estate taxes, and owed Assignee Lender a principal sum of $20,606,597.77 plus interest, late charges, and other amounts due pursuant to the loan documents. *Id.* at 414. After Assignee Lender made that prima facie case through Skoko's affidavit, the burden then shifted to the Physicians to show that there was a genuine issue of material fact concerning this issue. *See Dreaded, Inc.*, 904 N.E.2d at 1270.

In their brief, the Physicians cite no evidence and make no argument that the amount of principal due on the loan is incorrect. The Physicians merely question the sufficiency of the Skoko affidavit to substantiate the liability and amount of damages. However, affidavits are appropriate evidence to use at the summary-judgment stage as

long as they are based on personal knowledge and set forth facts that would be admissible in evidence. T.R. 56(E). Additionally, affidavits have previously been held to "establish[] a prima facie case to recover the debt" from guarantors. *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 430 (Ind. Ct. App. 1996). Because affidavits are appropriate evidence at the summary-judgment stage, the Skoko affidavit is sufficient proof of damages in this case.

Additionally, although the Skoko affidavit is sufficient proof of liability and damages, Assignee Lender also provided the sworn admission of the principal obligor, Medical Center, from its bankruptcy proceedings as proof of damages. Appellee's App. p. 774. In the sworn admission, Medical Center admits to owing $20,606,597.77 on its note and first mortgage. *Id.* Taking this admission together with the Skoko affidavit, the Physicians have failed to show that there is a genuine issue of material fact surrounding liability and the amount of damages; the trial court did not err in making this finding.

*C. Impairment of Collateral*

The Physicians finally contend that the trial court erred in granting summary judgment in favor of Assignee Lender because Assignee Lender must first exhaust its rights against Medical Center and execute on its collateral before enforcing the personal guaranties. The Physicians also argue that they should be allowed to conduct discovery to determine if Assignee Lender unreasonably impaired the value of the Medical Center's collateral, the collateral that they claim should have been executed on first. We disagree.

Kentucky classifies a guaranty as either one for payment – an absolute guaranty – or one for collection – a conditional guaranty. *See Liberty Nat'l Bank & Trust Co. v. Russ*, 668 S.W.2d 567, 568 (Ky. Ct. App. 1984). A guaranty is an absolute guaranty

when it is subject to no conditions and contains an absolute promise to pay the outstanding indebtedness guaranteed. *See id.* The type of guaranty is determined under Kentucky law by looking at its language. *McGowan v. Wells' Trustee*, 213 S.W. 573, 577 (Ky. 1919). The guaranty involved in this case is an absolute guaranty, as it expressly states that "[t]his is a guaranty of payment, not of collection . . . ." Appellee's App. p. 417. The guaranty goes on to say that "Guarantor therefore agrees that Lender shall not be obligated prior to seeking recourse against or receiving payment from Guarantor, to do any of the following . . . , all of which are hereby unconditionally waived by Guarantor: (1) take any steps whatsoever to collect from Borrower . . . ." *Id.*

When a guaranty is absolute, "the guaranty may proceed against the guarantor at once on default of the principal. The guarantor's liability is dependant upon the same rule of law by which the liability of one who has broken his contract is determined." *Yager v. Ky. Title Co.*, 66 S.W. 1027, 1028 (Ky. 1902). Therefore, Assignee Lender had the right to immediately enforce the guaranties against the Physicians and did not need to first exhaust its remedies against Medical Center or execute on its collateral. As a result, the Physicians' argument of impairment of collateral also must fail, because the collateral in question was not at issue. The trial court did not err in granting summary judgment in favor of Assignee Lender.

## II. Individual Arguments

In addition to the arguments applying to all of the Physicians' guaranties as a whole, the Physicians also make arguments that concern only specific individual Physicians.

*A. Lack of Consideration*

11

The Physicians argue that there are issues of material fact that certain guaranties should be invalid for lack of consideration, which is an absolute requirement for a contract under Kentucky law. *See, e.g.*, *Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky. Ct. App. 2000). Specifically, the Buridi, Henderson, and Rouben guaranties were signed almost three weeks after the contract was executed. Therefore, the Physicians argue, there was no benefit to them because the contract had already been signed, and Original Lender gave up nothing because it was already contractually obligated to provide the loan proceeds by the time these three guaranties were signed.

Assignee Lender, however, argues that *Smith v. Bethlehem Sand & Gravel Co., LLC*, 342 S.W.3d 288 (Ky. 2011), is instructive on this issue. In *Bethlehem Sand*, Smith, the guarantor, executed a guaranty of a loan made to his company, Brooks Sand & Gravel. However, Smith argued that the guaranty was invalid for lack of consideration because it was executed one day after the promissory note was executed. The Kentucky Court of Appeals found adequate consideration because the guaranty was part of the inducement for making the loan, and the Note and guaranty were both signed for exactly the same purpose. *Id.* at 294-95.

The Physicians contend that *Bethlehem Sand* is distinguishable because of the difference in the amount of delay, the number of guarantors, and the sophistication of the party signing the guaranty. Br. of Appellants Buridi, et al. p. 13. However, we agree with Assignee Lender that the court was focusing on the financial interest of the individual guarantor, Smith, in the borrower, Brooks Sand & Gravel, and the substance of the transaction itself when it found that there was adequate consideration present in

*Bethlehem Sand.* We therefore reject the Physicians' attempt to distinguish *Bethlehem Sand* from the present case, and we apply its holding and reasoning.

In this case, the Physicians had a clear financial interest in the borrower, KI, as they all invested varying amounts of money in the corporation. Also, the substance of the transaction itself shows that the guaranties were signed in order to induce the loan, meaning that the guaranties and note were signed for the exact same purpose. Despite any delay in signing these three specific guaranties, the guaranties as a whole and the note were signed with the specific purpose of procuring the loan for the construction of the hospital. We therefore find any argument contending that there was a lack of consideration as a result of the delay in signing to be without merit under the reasoning in *Bethlehem Sand*.

### *B. Mistake of Fact*

The Physicians also argue that there are material issues of fact concerning whether Glisson's guaranty is void in whole or in part for a unilateral mistake of fact. They contend that his personal liability under the guaranty is disproportionate to the two-and-a-half shares of KI that he owns – half of the jointly owned five shares he owns with his business partner – and that Original Lender must have made a mistake in drafting the terms of his guaranty. We find this argument to be without merit.

Under Kentucky law, in order to rescind a contract for a unilateral mistake, "the consequences of the mistake must be so grave that the enforcement of the contract would be unconscionable, the mistake must relate to a material feature of the contract, the mistaken party must have exercised ordinary diligence, and the rescission must be

13

possible without serious prejudice to either party." *Jones v. White Sulphur Springs Farm, Inc.*, 605 S.W.2d 38, 43 (Ky. Ct. App. 1980). This is simply not the case here.

Glisson was given the opportunity to read the guaranty before he signed it, and if he thought that the amount of liability was incorrect based on the number of shares of KI that he owned, he should not have signed it. A party's own negligence in failing to read the terms of a contract prevents him from claiming that it does not say what he believes it should. *See Prewitt v. Estate Bldg. & Loan Ass'n*, 156 S.W.2d 173, 174 (Ky. 1941). Glisson did not exercise ordinary diligence in the signing of the guaranty, so he cannot now claim that the guaranty contained a mistake, the enforcing of which would cause consequences so grave as to be considered unconscionable. The trial court did not err in finding this guaranty to be enforceable.

*C. Transfer of Ownership of KI Shares*

Finally, the Physicians argue that there are material issues of fact concerning whether the transfer of Digenis' and Rahman's ownership interest in their shares of KI reduces or eliminates their liability under their personal guaranties. They contend that Digenis and Rahman informed Original Lender of these transfers, so they should have been allowed to conduct discovery to determine if the bank was in fact on notice of the transfers. We disagree.

When Digenis and Rahman notified Original Lender of their transfers, they did so orally and not in writing. Under Kentucky law, "oral agreements or representations cannot be proved or relied upon if they contradict a positive provision of the written contract." *Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 751 (E.D. Ky. 2010). The guaranties signed by the Physicians, including Digenis and Rahman, specifically stated

14

that "[n]o amendment, modification or waiver shall be deemed to be made by Lender unless *in writing signed by an officer of Lender*." Appellee's App. p. 420 (emphasis added). Therefore, the oral representations made by Digenis and Rahman cannot be relied upon because they directly contradict a provision of the written guaranty.

Additionally, guaranties fall within Kentucky's statute of frauds, Ky. Rev. Stat. Ann. § 371.010 (West 1990), and "the Supreme Court of Kentucky [has] recognized that subsequent agreements that materially alter the terms of agreements within the statute of frauds must also meet the statute of frauds' writing requirement." *Waxman*, 726 F. Supp. 2d at 752. If Digenis and Rahman wanted to reduce or eliminate their personal liability under their guaranties, they must have done so in writing. The trial court therefore did not err in finding that there was no issue of material fact that Digenis' and Rahman's liability should not be reduced or eliminated as a result of their transfer of KI shares.

Affirmed.

CRONE, J., and BRADFORD, J., concur.